UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISTRICT COUNCIL 16 NORTHERN CALIFORNIA HEALTH AND WELFARE TRUST FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRYAN J. VALVERDE, <br><br> Defendant. | Case No. 22-cv-04207-VC <br><br> **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 29 |

The motion for default judgment is granted.

The plaintiffs, several employee benefit plans and their fiduciaries and trustees, allege that Bryan Valverde failed to make contributions to their plans and to submit to an audit, as required by their collective bargaining and trust agreements. Valverde was properly served on December 19, 2022, Dkt. No. 16, but he has failed to appear. The clerk entered default, and the plaintiffs have now moved for default judgment.

The motion raises three issues. First, should default judgment should be entered under the *Eitel* standard? Second, can the plaintiffs recover damages incurred after the complaint was filed? And third, is it appropriate to issue an injunction requiring Valverde to comply with an audit while also awarding estimated contributions?

I

The first question is straightforward. In deciding whether to enter default judgment, courts look to the *Eitel* factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake

in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). These factors weigh in favor of entering default judgment. Valverde's failure to respond thwarts the plaintiffs' ability to obtain a decision on the merits. He failed to file an answer, and so the allegations in the complaint (except those related to damages) are accepted as true. *Board of Trustees of Bay Area Roofers Health & Welfare Trust Fund v. Fajardo*, No. 19-CV-06586, 2020 WL 3396778, at *1 (N.D. Cal. June 19, 2020). Those well-pled allegations establish Valverde's liability, and the remaining supporting documents further support the plaintiffs' claims. The amount of money sought is relatively small. Given Valverde's failure to respond, there is likely no dispute over material facts. Finally, there is no colorable argument for excusable neglect. These factors outweigh the "strong policy" favoring a decision on the merits, and so default judgment is appropriate.

## II

The second issue—whether the plaintiffs can recover damages incurred after the complaint was filed—has generated some debate in the case law.[1] The complaint was filed on July 20, 2022, and it alleges that Valverde failed to make contributions from March to June 2022. Compl. ¶¶ 14, 15. The complaint also says that the plaintiffs are entitled "any and all contributions, and all liquidated damages and interest on delinquent contributions, found due on timecards, audit, or otherwise including estimated contributions for months Defendant failed to report to Plaintiffs, through the time of Judgment." ¶ 16. The plaintiffs now say that Valverde failed to make additional contributions due after the complaint was filed, and so they seek contributions from April 2022 to September 2022 (plus liquidated damages and interest). They also say that Valverde failed to file a contribution report for September 2022, and so they seek estimated contributions for that month.

---

[1] The plaintiffs' other requests for damages and attorneys' fees are supported by the record.

2

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." That rule is partly motivated by due process concerns. A complaint is supposed to give a defendant adequate notice of the claims against them, so that the defendant can decide whether it's worth it to defend against those claims. *Trustees of the St. Paul Electrical Construction Industry Fringe Benefit Funds v. Martens Electric Co.*, 485 F. Supp. 2d 1063, 1064–65 (D. Minn. 2007). Based on the complaint, a defendant may decide that given "the (high) likelihood that he will be found liable, or the (low) amount of damages the plaintiff is seeking, he will not make an appearance, but will instead permit a default judgment to be entered against him." *Id*. at 1065. If the defendant chooses not to make an appearance, the plaintiff does not need to give the defendant notice that they are seeking default judgment, *see* Fed. R. Civ. P. 5(a)(2)—but relief is limited to what's in the complaint to ensure that the defendant has notice of what they've given up. *See Martens Electric*, 485 F. Supp. 2d at 1065.

Relying on these principles, at least two district courts have suggested that it might be inappropriate, in the context of a default judgment, to award damages against an employer for contributions the employer failed to make *after* the complaint was filed—even if the complaint referenced the possibility of those future damages. *See id.* at 1064–69; *Board of Trustees of Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co.*, No. 08-2038, 2009 WL 1704677, at *4–5 (N.D. Cal. June 17, 2009). For example, in *Total Air Balance*, Judge Conti reasoned, "[a] vague statement in the complaint that suggest[s] the possibility of future liability, coupled with a statement of intent to recover on that liability, cannot generally amount to 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" 2009 WL 1704677, at *4 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Martens Electric*, 485 F. Supp. 2d at 1068. Judge Conti expressed concern that "giving judicial effect to a vague statement that only portends future liability could potentially result in a failure of due process" because the defendant could "face liability far beyond that specifically described by the complaint." *Total Air Balance*, 2009 WL 1704677, at *4. The solution to this concern, apparently, is to require a

plaintiff seeking default judgment to file an amended complaint at or near the time of judgment specifying the precise amount of damages they seek. *Id.* at *5.[2]

The concerns expressed in these two district court rulings appear to be misplaced, and their proposed solution seems both impractical and unfair to plaintiffs whose opponents have failed to appear in court. It's not uncommon for a complaint to allege that a defendant is engaged in an ongoing course of conduct that will cause future damages. Such a complaint adequately puts the defendant on notice of their potential liability. In a patent infringement case, for instance, a plaintiff might allege that a defendant's product infringes their patent, and they might seek all damages incurred before judgment. Or in a wage-and-hour case, an employee might allege that their employer's violations are ongoing and seek unpaid wages up to the time of judgment. When a case like that is litigated on the merits and the plaintiff is awarded their requested damages, there's never any argument that the complaint didn't give the defendant adequate notice of their potential liability. And there's certainly never any suggestion that the plaintiff should have filed an amended complaint on the eve of judgment. Why should it be different in the context of a default judgment? If a complaint puts the defendant on notice that the plaintiff seeks damages for ongoing harm, and if the plaintiff then proves up their claim for damages in a motion for default judgment, why shouldn't the plaintiff be able to recover? It is the defendant, after all, who made the choice not to appear in court to defend against the plaintiff's claims.

Nor does it seem fair to require the plaintiff to file an amended complaint at or near the time of the motion for default judgment. After all, that amended complaint must again be served, the defendant must again be given a chance to respond, the plaintiff must again seek entry of default from the clerk's office, and only then can the plaintiff file a motion for default judgment.

---

[2] Notwithstanding these concerns, both courts ultimately awarded damages for the post-complaint contributions because the defendants had not merely been served with the complaint; they had received notice of the motion for default judgment as well. *Total Air Balance*, 2009 WL 1704677, at *4–5; *Martens Electric*, 485 F. Supp. 2d at 1069. Like the defendants in those cases, Valverde has been served with the motion for default judgment. Dkt. No. 34.

By the time that process is done, there might be new delinquent contributions, leading to an indefinite loop of further amendments, entries of default, and motions for default judgment. *See Total Air Balance*, 2009 WL 1704677, at *5. There is no reason to put the plaintiff through those paces in a case where the defendant has chosen not to appear—particularly given that defendants in the default judgment context often make it difficult to complete service. *See, e.g.*, Dkt. No. 15 (granting a request for an extension of time to serve Valverde given repeated difficulties in serving him). And as *Total Air Balance* shows, defendants can manipulate this process by paying past damages whenever a new complaint is filed and then immediately returning to their old ways moving forward. *Total Air Balance*, 2009 WL 1704677, at *4–5.

In *Martens Electric*, Judge Schiltz expressed concern that a plaintiff seeking ongoing damages could delay filing a motion for default judgment and allow damages to rack up in the meantime: A "pension fund [could] seek a default judgment in a month—or in ten months—or in a year—or in ten years," and the defendant would have no notice of that motion. *Martens Electric*, 485 F. Supp. 2d at 1067. But that concern seems more theoretical than real because in practice, there's no incentive to wait. Pension plans want their contributions so they can invest them and pay out benefits. And it's likely that the longer a plan waits before seeking default judgment, the more difficult it will be to collect that judgment. Anyway, to the extent this is a concern at all, district courts can easily address it by setting deadlines following a defendant's failure to appear for the filing of a motion for default judgment. And in the unlikely event that a plaintiff waits an excessive amount of time before seeking default judgment, a court can consider that when deciding the motion. After all, default judgment is not automatic; the court must consider the *Eitel* factors, including the sum of money at stake.

Here, the complaint alleges that Valverde has engaged in an ongoing course of conduct— his failure to report and pay his required contributions. And the complaint asserts an entitlement to future delinquent contributions. Those allegations were enough to put Valverde on notice and to allow him to make an informed decision about whether to defend the case on the merits. Valverde chose not to defend, and so it is appropriate to award damages for the harm incurred

after the complaint was filed.

## III

The final issue in this case is whether the plaintiffs are entitled to both estimated contributions for September 2022 and an injunction requiring Valverde to comply with an audit of his records. Some courts have held that it is inappropriate to award both estimated damages and an audit for the same period. *See, e.g.*, *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 223 (E.D.N.Y. 2016). For an injunction to issue, the plaintiffs must have no adequate remedy at law. *Id.* at 222–23. These courts reason that, if a contract allows for estimated contributions, the plaintiffs do have an adequate remedy at law for any missed payments, and so an audit is unnecessary. *See id.* at 223. Moreover, allowing for both estimated damages and an audit creates pragmatic problems: "Should the Court grant the application in its entirety, and the defendants thereafter comply with the Court's injunction, what then? If the audit reveals vast sums of unclaimed delinquent contributions, do the plaintiffs return to court, seeking to upset a judgment? If the audit instead reveals significantly fewer delinquent contributions than estimated, would that render a judgment based on the estimated sums suspect?" *Id.* (quoting *Ferrara v. A Star Business Services of New York Corp.*, No. CV 11-5841, 2013 WL 1233114, at *8 n.3 (E.D.N.Y. Feb. 26, 2013)). Based on those concerns, a number of courts have rejected requests for an audit when the plaintiffs also seek estimated contributions.

At least in this case, the audit and the estimated damages serve distinct purposes. The estimated damages will compensate the plaintiffs only for September 2022, the month when Valverde did not submit a contribution report. The audit, in contrast, might reveal that Valverde underpaid in other months. The estimated damages cannot fully compensate the plaintiffs for the harm in this case—Valverde's refusal to comply with the contractually-mandated audit. As for the pragmatic concerns, the plaintiffs have said that if the audit reveals that the estimated contributions were over-compensatory, they will credit that amount against Valverde's account. Dkt. No. 40. Given that explanation, it's appropriate to award both forms of relief.

A separate judgment will follow.

**IT IS SO ORDERED.**

Dated: June 22, 2023

_____

VINCE CHHABRIA
United States District Judge